William R. SCHOTT, Melvin Van De Ven, & Charles Naile, d/b/a Schott & Company, Plaintiffs/Appellants,

v.

Debra A. BEUSSINK, Everett R. Hey, Thomas D. Martin, Jerry W. Roe, all individually and d/b/a Beussink, Hey, Martin & Roe, Respondents.

No. 71172.

Missouri Court of Appeals, Eastern District, Division Four.

July 22, 1997.

Motion for Rehearing and/or Transfer to Supreme Court Denied Aug. 26, 1997.

Application to Transfer Denied Sept. 30, 1997.

Stephen C. Wilson, Jackson, for plaintiffs/appellants.

Walter S. Drusch, Cape Girardeau, for defendents/respondents.

RHODES RUSSELL, Presiding Judge.

Plaintiffs are general partners in an accounting firm known as Schott & Company ("employer"). Defendants ("employees"), who are certified public accountants, formerly worked for employer. Employer appeals the dismissal of its third amended petition alleging breach of contract, civil conspiracy, and interference with contract. The trial court dismissed the petition for failure to state a claim upon which relief could be granted. We affirm in part and reverse and remand in part.

During the course of their employment, employees worked under a series of one-year contracts. Each employment contract contained a provision which stated that if an employee terminated the contract other than on June 30, for any reason other than nonfulfillment of the terms of the contract, the employee would have to pay employer a sum equal to two months of the employee's salary. In addition to this provision, each contract contained a non-compete clause or restrictive covenant which provided that:

> The Employee covenants and agrees that for a period of two (2) years after the termination of this Agreement that he as an individual or in conjunction with associates or as an employee of another corporation, accountant or firm or company of accountants, will not come directly or indirectly, solicit or do any tax, auditing, accounting, system, or related types of work of or for any of the clients of the Employer for whom the Employer has done business during the fifteen (15) month period preceding the termination of this Agreement,

or with whom they were at that date in negotiation to do business.

Five months prior to the end of their contracts, employees terminated their employment with employer. Employer brought suit against employees alleging four causes of action: 1) breach of the covenant which prohibited termination of the contract other than on June 30; 2) breach of a restrictive covenant prohibiting withdrawing employees from soliciting employer's clients within two years after withdrawal; 3) civil conspiracy; and, 4) interference with contract relations.

Employees filed a motion to dismiss the breach of contract claim regarding the restrictive covenant for failure to state a cause of action. Employees maintained that the restrictive covenants which prohibited them from soliciting employer's clients for two years were unenforceable in that the provisions did not contain spatial limitations, and therefore, were not valid restrictive covenants. Employees also alleged that the contract provisions were unenforceable because they were against public policy.

The trial court sustained employees' motion to dismiss, finding that the restrictive covenants were unenforceable because of public policy. In addition, the court stated that the contractual provisions were not valid restrictive covenants because they did not contain spatial limitations.

Employer filed a notice of appeal from that dismissal. Our court dismissed that appeal for lack of jurisdiction, finding that the dismissal order was not final for purposes of appeal. *See Schott v. Beussink*, 913 S.W.2d 106 (Mo.App.1995). Subsequently, employees filed motions to dismiss the remaining portions of employer's petition. The trial court sustained employees' motions to dismiss the civil conspiracy and interference with contract claim. The trial court also noted that a judgment dismissing the breach of contract claim regarding the restrictive covenants had been previously rendered. Subsequently, employer filed a voluntary non-suit, dismissing all remaining portions of its petition. This appeal of the trial court's dismissal follows.

In reviewing a trial court's order dismissing a claim, we accept all properly pleaded facts as true, we give all the pleadings their broadest intendment, and we construe all allegations favorably to the pleader. *Wenthe v. Willis Corroon Corp.*, 932 S.W.2d 791, 793 (Mo.App.1996). A petition is sufficient if it invokes substantial principles of law which entitle the plaintiff to relief and informs the defendant of what the plaintiff will attempt to establish at trial. *Id.*

## I. BREACH OF CONTRACT CLAIM– RESTRICTIVE COVENANT

In its first point, employer contends the trial court erred in dismissing its claim seeking enforcement of the contract provision prohibiting withdrawing employees from soliciting its clients for two years after withdrawal. Employer argues that the trial court erroneously applied the law as employees were subject to valid non-compete provisions, and because there is no recognized public policy which would preclude enforcement of the non-compete provisions.

In its dismissal, the trial court relied upon the holding in *Dwyer, Costello and Knox, P.C. v. Diak*, 846 S.W.2d 742(Mo.App.1993). In *Diak*, an accountant of a professional corporation resigned his employment and formed a partnership to provide CPA services to the public. The accountant, an employee at will, was not bound by a contract restricting competition with the corporation following termination of his employment. Following his resignation, the accountant continued to work for some of the corporation's former clients, and asked other accountants employed by the corporation to join his partnership. Corporation sued the accountant for breach of fiduciary duty in resigning his employment and entering into a competing accounting business. The corporation sought compensation from the accountant for soliciting business from its clients.

Our court concluded that the corporation was not entitled to compensation simply because the clients followed the accountant to his newly formed partnership. *Id.* at 747. Noting that our economy is based upon free competition, the court stated that the clients

were absolutely privileged to pick their own professional providers. *Id.*

However, we also noted that if the corporation had wished to protect itself against competition from its accounting employees, the corporation should have sought covenants restricting their competition. *Id.* at 748. Our court concluded, however, that it did not have to decide if a covenant restricting an accountant's competition was enforceable or not, since the accountant here was an employee at will. *Id.* at 748 n. 1.

Citing *Diak*, the trial court herein stated that the contractual provisions, which prevented the employees from performing accounting services for the clients they served while employees of employer, were contrary to public policy and unenforceable. The trial court also acknowledged the footnote in *Diak* that an employer might be able to restrain its accountant employees from competing with or soliciting its clients with a restrictive covenant. However, the trial court found that employer's restrictive covenants were unenforceable in that they lacked spatial limitations. Accordingly, the trial court dismissed the cause of action.

We first address if the trial court's dismissal was proper based upon public policy grounds. Employer is correct that *Diak* did not hold that covenants not to compete among accountants are against public policy. *Diak* essentially held that where an accountant employee at will, not subject to a restrictive covenant, leaves an employer and solicits the accounting work of employer's clients, the employee is free to do so, and it is not a breach of any fiduciary duty owed to the former employer. Our court specifically pointed out in *Diak* that if the employer wished to protect itself from competition from its accounting employees, it should have inserted restrictive covenants within an employment contract. However, *Diak* did not decide whether restrictive covenants among accountants were enforceable.

Employees do not cite any authority other than *Diak* to support their position that the restrictive covenants are against public policy in the accounting profession. Other jurisdictions have held that restrictive covenants in accountants' employment contracts are enforceable and not against public policy. *See Perry v. Moran*, 109 Wash.2d 691, 748 P.2d 224 (1987); *Wolf & Co. v. Waldron*, 51 Ill. App.3d 239, 9 Ill.Dec. 346, 366 N.E.2d 603 (1977); *Thompson, Breeding, et al. v. Bowlin*, 765 S.W.2d 743 (Tenn.App.1987); *Ebbeskotte v. Tyler*, 127 Ind.App. 433, 142 N.E.2d 905 (1957); *Enforceability of Covenant Against Competition in Accountant's Employment Contract*, 15 A.L.R.4th 559 (1982).

■ Missouri courts recognize that public policy approves employment contracts containing restrictive covenants because the employer has a proprietary right in its stock of customers and their good will, and if the covenant is otherwise reasonable, the court will protect the asset against appropriation by an employee. *Empire Gas Corp. v. Graham*, 654 S.W.2d 329, 331 (Mo.App.1983). In *Willman v. Beheler*, 499 S.W.2d 770, 777 (Mo.1973), our Supreme Court, in upholding a restrictive covenant among doctors, rejected the notion that public policy should prevent the enforcement of restrictive covenants. The court noted that "[t]here is a counterbalancing public policy which recognizes the interest of the public in protecting the freedom of persons to contract and in enforcing contractual rights and obligations." *Id.* Although *Diak* expressed a policy that clients are privileged to pick their own accountants, the holding of *Diak* was premised on the fact that the accountant was an employee at will. Insofar as the trial court relied upon *Diak* to hold that the restrictive covenants between accountants are unenforceable because of public policy, the trial court's dismissal was improper.

The trial court, however, also stated it based its dismissal of the breach of contract claims because the restrictive covenants did not contain spacial limitations. Thus, the issue of whether the trial court erred in its dismissal turns on whether the restrictive covenants in the employees' contracts are enforceable without spatial limitations.

■ Restrictive covenants which limit an individual's exercise or pursuit of his or her occupation are in restraint of trade, and to be valid and enforceable, the covenants must be reasonable as to time and space.

*Osage Glass, Inc. v. Donovan,* 693 S.W.2d 71, 74 (Mo. banc 1985). To the extent a restrictive covenant is not demonstrably reasonable, it will not be enforced. *Continental Research Corp. v. Scholz,* 595 S.W.2d 396, 400 (Mo.App.1980). Temporary and spatially limited restraints are enforceable if reasonable under all attending circumstances and if enforcement serves the employer's legitimate interests. *Mo–Kan Cent. Recovery Co. v. Hedenkamp,* 671 S.W.2d 396, 399 (Mo.App. 1984). The standard for determining the reasonableness of the geographic scope of a restrictive covenant is whether it is no greater than fairly required for protection. *Continental Research,* 595 S.W.2d at 400.

In *National Motor Club of Missouri v. Noe,* 475 S.W.2d 16, 22 (Mo.1972), our Supreme Court found that a non-competition clause which provided that the employee could not enter into competition with the employer for a period of two years after termination "was void as against public policy because [it was] not reasonably limited to any territory of competition." Similarly, in *Prentice v. Williams,* 324 S.W.2d 466 (Mo. App.1959), the Southern District found that a restrictive covenant which prohibited the defendant from inseminating cows for a period of two years to be invalid in that the covenant was wholly unlimited as to area. However, these cases do not directly hold that a restrictive covenant is unenforceable merely because it lacks a spatial or geographical restriction.

In *Sigma Chemical Co. v. Harris,* 794 F.2d 371 (C.A.8(Mo.) 1986), an employee signed a restrictive covenant which prohibited him from working for his employer's competitor for a period of two years after his termination. On appeal, employee argued that the restrictive covenant was unenforceable because it failed to contain a geographic restriction. *Id.* at 374. The court noted that it did not have to decide whether the employee was correct in his assertion that the covenant was unenforceable in that it lacked a geographic restriction. Instead, the court upheld the covenant insofar as it prohibited employee from working for employer's competitor.

The present case is distinguishable from *Noe* and *Prentice.* In those cases, the employees were restricted from competing altogether with their respective employers without any limitation to geographic area. Here, however, employees are not denied the right to engage in the practice of accounting universally, but are prohibited from soliciting employer's clients for whom employer had done business with during the fifteen-month period preceding the termination of the contracts.

It has been suggested that one way of limiting a post-employment restraint so as to be reasonable without having to establish a territorial restraint is to draft a covenant restricting the former employee from soliciting the former employer's clients. Harold William Hinderer III, *Covenants Not to Compete–Enforceability Under Missouri Law,* 41 Mo.L.Rev. 37, 43 (1976). This method was employed in *Mills v. Murray,* 472 S.W.2d 6 (Mo.App.1971). In *Mills,* the court found that an employment contract which prohibited an employee for three years after terminating his service, from soliciting, contracting with, or serving those whom he had served during the last year of his employment to be reasonable. *Id.* at 11–12. Although the restrictive covenant did not impose a spatial restraint, the court found the covenant to be enforceable without a spatial restraint in that the employee was not prohibited from competing with his former employer. Instead, the employee was only restricted from soliciting his employer's clients for a period of three years. The court noted that since the restrictive covenant did not impose a spatial restraint, the employee was not forbidden from conducting a competing business at the employer's doorstep as soon as he left the employer's service. *Id.* at 12.

Here, the restrictive covenant is akin to the one in *Mills.* The restrictive covenant on its face does not prohibit employees from engaging in the practice of accounting alongside employer. Although employees are prohibited by their contracts from soliciting employer's clients, they are otherwise free to practice accounting wherever and whenever they chose. Although not stated in express geographical terms, the limitation of the re-

strictive covenant applies to employer's clients whom the employer had done business during the fifteen-month period preceding the termination of the contracts.

■ "[A]s the specificity of limitation regarding the class of person with whom contact is prohibited increases, the need for limitation expressed in territorial terms decreases." *Seach v. Richards, Dieterle & Co.,* 439 N.E.2d 208, 213 (Ind.App.1982).[1] The absence of a geographical limitation in this case does not render the restrictive covenant unenforceable. As stated previously, the covenant does not prevent employees from practicing in any particular geographical area, it merely prohibits them from soliciting employer's clients. Therefore, the restrictive covenant is not void merely because it lacks a limitation expressed in territorial terms.[2]

In conclusion, we find that the trial court erred in dismissing paragraphs seven and eight of Counts I through IV of employer's petition regarding the breach of the restrictive covenant. We reverse and remand for further proceedings consistent with this opinion.

## II. CIVIL CONSPIRACY CLAIM

In its second point, employer contends the trial court erred in dismissing Count V, the civil conspiracy claim, in that the trial court's judgment erroneously applied and declared the law because all elements necessary for a civil conspiracy were pled.

Count V provided in relevant part:

Defendants Debra A. Beussink, Everett E. Hey, Thomas D. Martin, and Jerry Roe, individually and acting in concert and jointly breached and continue to breach their respective employment contracts with plaintiff, marked Exhibits A, C, D, and E and attached to this Petition, in the following respects:

A. Said defendants conspired to form a partnership and illegally and wrongfully terminated their employment contracts with plaintiff.

B. Said defendants have violated and breached Section X of said contract by soliciting and doing tax, auditing, accounting, system, and related types of work for many clients for whom plaintiffs have done business during the 15–month period preceding the termination of such contracts.

In their motion to dismiss, employees contended that Count V failed to state a claim upon which relief can be granted in that the only allegation of conspiracy was that the employees "conspired to form a partnership." Employees stated that employer did not point to any case nor theory that would make the formation of a partnership illegal.

Employees also moved to dismiss the civil conspiracy claim on the grounds that the damages which employer sought were based upon the business revenues and the profits employees had received by doing accounting work for employer's clients (for allegedly violating the restrictive covenants). Essentially, employees claimed that it should be dismissed because the damages sought were specifically prohibited by *Diak.* We disagree.

■ A civil conspiracy is an agreement between two or more persons to perform an unlawful act, or to use unlawful means to do an act which is lawful. *Mark VII, Inc. v. Barthol,* 926 S.W.2d 128, 131 (Mo.App.1996). In order to establish a cause of action for civil conspiracy, the plaintiff must plead sufficient facts to support the following elements: 1) two or more persons; 2) an object to be accomplished; 3) a meeting of minds on the object or course of action; 4) one or more unlawful acts; and, 5) damages. *State Farm Mutual Automobile Insurance Co. v. Weber,* 767 S.W.2d 336, 338 (Mo.App.1989); *Mackey v. Mackey,* 914 S.W.2d 48, 50 (Mo.App.1996).

---

1. Court held that covenant not to compete between accountant and former employer was enforceable despite lack of geographic limitation, where impermissible actions of employee were clearly limited by restriction regarding class of persons with whom contact was proscribed.

2. See *Enforceability of Restrictive Covenant as Affected by Territorial Extent of Restriction,* 43 A.L.R.2d 94, Section 11 (1955), which states that the mere fact that a restrictive covenant "ancillary to a contract of employment contains no limit as to its territorial extent ... does not standing alone, render the restraint ipso facto unenforceable."

The term unlawful, as it relates to civil conspiracy, is not limited to conduct that is criminally liable. Individuals associating for the purpose of causing or inducing a breach of contract is a basis for an unlawful conspiracy. *Id.*

Employees first argue that employer has failed to state a cause of action for civil conspiracy because the only conspiracy alleged is that the employees conspired to form a "partnership." Employees contend that since the object of the conspiracy, the forming of a partnership, is not illegal, the trial court properly dismissed employer's claim.

Employees are correct in asserting that the formation of a partnership, in itself, is not an unlawful object. However, "[a] conspiracy which has for its object the accomplishment of a lawful purpose may be brought into condemnation of the law by doing unlawful things to consummate that purpose." 15A C.J.S. *Conspiracy* Section 4 (1967). "The unlawfulness of a conspiracy may be found either in the end sought or the means used." *Adams Dairy, Inc. v. Burke,* 293 S.W.2d 281, 290 (Mo.1956)(citing 15A C.J.S. *Conspiracy* Sections 3 and 4).

Although not artfully pled, it appears that employer alleged that employees conspired to form a partnership by unlawfully terminating their respective employment contracts and by soliciting employer's former clients in violation of the restrictive covenants. Albeit the object or purpose of the alleged conspiracy was not unlawful, the means used to accomplish it allegedly were.[3]

We need not address the trial court's other basis for sustaining employees' motion to dismiss inasmuch we have found herein the restrictive covenants are not void due to public policy reasons nor lack of spatial limitations.

After review of the pleadings and giving the allegations of employer's petition every fair and reasonable intendment, we find that employer properly stated a claim for civil

conspiracy. Therefore, we reverse and remand.

## III. INTERFERENCE WITH CONTRACT CLAIM

In its third point, employer contends the trial court erred in dismissing its interference with contract claim, Count VI, in that the trial court erroneously applied and declared the law. We disagree.

Employer alleged in its petition that employees "individually and in concert intentionally interfered with the employment contracts of the other, inducing and causing the other to breach and terminate their respective employment contracts and employment relationships with plaintiffs-employer, *all of said actions being without justification or excuse.*" (Emphasis added.)

In their motion to dismiss Count VI, employees asserted that employer failed to state a claim upon which relief can be granted. In addition, employees stated that Count VI should be dismissed because the damages sought were identical to those sought in Counts I through IV. Employees contend that the allegations were not sufficient to establish that the alleged intentional interference with a contract was "without justification or excuse."

To state a cause of action for tortious interference with a contract, the plaintiff must allege facts which establish: 1) the existence of a contract; 2) the defendant's knowledge of the contract; 3) that the defendant induced or caused the breach of the contract; 4) that the defendant's acts were not justified; and 5) the plaintiff suffered damages. *Lick Creek Sewer Systems, Inc. v. Bank of Bourbon,* 747 S.W.2d 317, 322 (Mo.App.1988). A defendant is justified in inducing a contract's breach, unless the defendant uses improper means to induce the breach. *Id.* at 323. The plaintiff must plead the improper means used to induce the breach of contract. *Id.* The absence of justification is an essential element of the claim for interference with contract. *Cady v.*

---

**3.** See *Property Tax Representatives, Inc. v. Chatam,* 891 S.W.2d 153, 159–60 (Mo.App.1995). Western District found that former employer established civil conspiracy claim against new employer, based on allegation that new employer

conspired with employee to breach employee's nonsolicitation agreement with former employer. The thrust of employer's civil conspiracy claim is essentially like the claim in *Chatam.*

*Hartford Accident & Indemnity Co.,* 439 S.W.2d 483, 485 (Mo.1969). Mere conclusions of a pleader not supported by factual allegations cannot be taken as true, and therefore, must be disregarded in determining whether the petition states a claim upon which relief can be granted. *Id.* at 485–86.

Here, the allegations merely stated that "all of said actions being without justification or excuse." This allegation is conclusionary in nature and is not supported by factual allegations.[4] We have found no factual allegations to support the claim that employees' acts were not justified. We conclude that employer has failed to allege sufficient facts to support its claim of interference with contract. Point three is denied.

We reverse the order dismissing the breach of contract claim for violation of the restrictive covenants (paragraphs seven and eight of Counts I through IV), and Count V. We affirm the trial court's order dismissing Count VI. We remand the case for further proceedings consistent with this opinion.

SIMON and KAROHL, JJ., concur

---

4. *See Pillow v. General American Life Insurance Co.,* 564 S.W.2d 276 (Mo.App.1978)(Plaintiff failed to state sufficient facts to support allegation that defendant's acts were without justification where petition recited "that all these actions, were done maliciously, intentionally and without legal justification or legal excuse.").