**LYN–FLEX WEST, INC.,**
**Plaintiff/Appellant,**

v.

**Wayne DIECKHAUS, et al.,**
**Defendants/Respondents.**

**No. ED 75852.**

Missouri Court of Appeals,
Eastern District,
Division One.

Dec. 21, 1999.

---

694

Charles A. Seigel, III, Michael A. Wolff, Seigel & Wolff, P.C., St. Louis, for respondent.

PAUL J. SIMON, Judge.

Lyn–Flex West, Inc., plaintiff, appeals the judgment entered following the grant of a directed verdict in favor of defendants, Wayne Dieckhaus (Wayne), Dick Dieckhaus (Dick), George Convy, and Walk Easy Manufacturing Co., Inc., (collectively defendants), in an action for misappropriation of trade secrets, tortious interference with a business expectancy, and conspiracy.

On appeal, plaintiff contends that the trial court erred in sustaining defendants' motion for directed verdict and withdrawing from the jury plaintiff's claims for damages because plaintiff presented sufficient evidence to make a claim for:(1) misappropriation of trade secrets under Section 417.450 RSMo 1998 Supp. (The Uniform Trade Secrets Act); (2) tortious interference with a business expectancy; and (3) conspiracy. We reverse and remand.

When reviewing a directed verdict in favor of a defendant, we view the evidence in the light most favorable to plaintiff, disregarding all contrary evidence and inferences. *Matter of Estate of Wilde*, 963 S.W.2d 336, 338 (Mo.App. E.D.1997). A directed verdict is a drastic action, and accordingly, we will reverse the trial court's directed verdict unless the facts and inferences therefrom are so strongly against the plaintiff as to leave no room for reasonable minds to differ as to a result. *Schumacher v. Barker*, 948 S.W.2d 166, 168 (Mo.App. E.D.1997).

The record, in the light most favorable to the plaintiff, reveals that plaintiff is a national corporation engaged in the business of shoe insole manufacturing. Walk Easy is also engaged in the same business and is currently one of plaintiff's two competitors, manufacturing the same products and servicing many of plaintiff's former

William M. Sauerwein, Martin W. Blanchard, William L. Sauerwein & Assoc., P.C., Clayton, for appellant.

customers at prices pennies lower than plaintiff's. In many instances, plaintiff's product codes are used by Walk Easy. Defendants Wayne, Dick and Convy, formerly officers of plaintiff, currently are officers of Walk Easy.

For years, plaintiff has compiled the identity of its customers, the technical and detailed information concerning products manufactured for each of those customers, the materials used in the production and manufacturing of each product, and the precise dimensions of each part comprising the insole, including notes and codes unique to each customer in a Detailed Price and Specifications Book (price book).

Plaintiff's current and former employees testified that the book was kept in an office with limited access and locked at night. Although it was not kept in a lock box or stamped confidential, office employees understood it to be such and that it would not be shown to competitors or those who had no need to see its contents. Dick acknowledged that the possession of the book in the hands of a competitor would give an advantage, at least in the area of pricing. Only Gary Hahn, plaintiff's computer technician, had the ability to print out a price book and it was distributed only to those who had a need to use it.

Peter Leher was the sole stockholder of plaintiff until his death. Wayne served as plaintiff's president, with Dick as general manager, and Convy as head of sales. Following Leher's death, plaintiff was operated by United Missouri Bank (UMB) as trustee of his estate. UMB contacted Wallace McNeill, an investor, to inquire whether he was interested in purchasing plaintiff. He declined, as he did not want to compete with an "inside group," consisting of Dick, Wayne, and Convy, along with several of plaintiff's employees who had already expressed an interest in purchasing the company from UMB. During negotiations with Dick, Wayne, and Convy, UMB began to distrust the inside group, as it felt that the Dick and Wayne submit-

ted income and expense reports without supporting information and that Convy had made misrepresentations as to the ownership of certain equipment. Additionally, UMB felt that their offer was too low according to the appraised value of plaintiff.

UMB again contacted McNeill to inquire as to whether he was interested in purchasing plaintiff and he traveled to plaintiff's facilities to view the premises, equipment, books and records. At Wayne's insistence, UMB required all prospective purchasers to sign a confidentiality agreement for fear that a prospective purchaser might be a front for a competitor. In particular, Wayne indicated his concern as to the disclosure of customer names and sales. McNeill signed such an agreement.

On November 7, 1997, McNeill purchased all of the company's stock and the purchase was announced to plaintiff's employees. The next day, Wayne, Dick and Convy announced to McNeill that they were leaving. The three officers left on November 12, 1997 and established Walk Easy, using a corporate name registered to Convy and his son. The lease for the manufacturing facility of Walk Easy had been negotiated one day earlier by Wayne. Dick had been shopping for equipment the week before he left plaintiff. Shortly before he left, Dick asked Jane Folker, who shortly thereafter went to work for Walk Easy, to ask Gary Hahn to print out a new price book for him. That price book has not been found on plaintiff's premises.

In a deposition, Jane Folker admitted to seeing one of plaintiff's price books in Dick's office at Walk Easy, and stated that she had observed Dick use the book on occasion. After these statements were made, the police searched the premises of Walk Easy and recovered a price book of plaintiff. At trial, Dick maintained that the book was given to him by Leher to be kept at his home. He admitted at trial that he did occasionally use the price book

for reference in pricing to see how Walk Easy prices compared to plaintiff's. While he maintained at trial that he developed Walk Easy's specifications from memory, reflecting his many years at plaintiff, when asked at trial, he could not recall those specifications. Some of Walk Easy's customers also stated that they did not provide Dick with specifications for their products.

As a result of the competition, plaintiff lost several customers to Walk Easy, including Justin Boot and its subsidiaries, costing plaintiff hundreds of thousands of dollars in lost sales.

Plaintiff brought suit in the circuit court in Franklin County, alleging misappropriation of trade secrets, tortious interference with a business expectancy and conspiracy. At the close of plaintiff's evidence, the defendants made an oral motion for a directed verdict on the basis that plaintiff had failed to produce evidence to support a finding that the price book was a trade secret and thus had failed to show that: (1) any trade secrets had been misappropriated, (2) defendants had acted without justification in interfering with plaintiff's business expectancy and (3) defendants conspired to commit an unlawful act. The trial judge sustained the oral motion, indicating that he did not believe that the price book was a trade secret, by stating "I don't think they made sufficient effort to protect the books before plaintiff bought the company. And all the evidence is that they used those old books." The trial court found that the book was not a trade secret and ruled that plaintiff had not established evidence sufficient to show misappropriation, absence of a justification for tortious interference and an unlawful act for conspiracy. The trial court made no written findings of fact and conclusions of law.

In its first point on appeal, plaintiff contends that the trial court erred in directing a verdict against plaintiff on its claims for damages for misappropriation of trade secrets under the Uniform Trade Secrets Act, Sections 417.450–417.467 RSMo 1998 (Cum.Supp.) (all further references herein shall be to RSMo 1998 (Cum.Supp.) unless otherwise noted). Plaintiff argues that it presented evidence sufficient to allow a reasonable jury to conclude that defendants had misappropriated trade secrets of plaintiff by removing a confidential price book belonging to plaintiff, using the information in such book to compete against plaintiff and that as a result plaintiff was thereby harmed. Defendants contend that the price book does not constitute a trade secret because the information contained in the book is generally known and no efforts were made to maintain its secrecy.

The Uniform Trade Secrets Act, sections 417.450 to 417.467, has been adopted in Missouri, the District of Columbia and forty other states. The definition section 417.453 provides, in pertinent part:

> As used in sections 417.450 to 417.467, the following terms mean:
>
>        \*   \*   \*
>
> (2) "Misappropriation":
>
>   (a) Acquisition of a trade secret of a person by another person who knows or has reason to know that the trade secret was acquired by improper means; or
>
>   (b) Disclosure or use of a trade secret of a person without express or implied consent by another person who:
>
>   a. Used improper means to acquire knowledge of the trade secret; or
>
>   b. Before a material change of position, knew or had reason to know that it was a trade secret and that knowledge of it had been acquired by accident or mistake; or
>
>   c. At the time of disclosure or use, knew or had reason to know that knowledge of the trade secret was:
>
>   i. Derived from or through a person who had utilized improper means to acquire it;

ii. Acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use; or

iii. Derived from or through a person who owed a duty to the person seeking relief to maintain its secrecy or limit its use;

\* \* \*

(4) "Trade secret", information, including but not limited to, technical or nontechnical data, a formula, pattern, compilation, program, device, method, technique, or process, that:

(a) Derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by other persons who can obtain economic value from its disclosure or use; and

(b) Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

\* \* \*

Prior to the act's adoption in 1995, we applied the definition of a trade secret found in the first Restatement. *See AEE–EMF, Inc. v. Passmore,* 906 S.W.2d 714, 721–722 (Mo.App. W.D.1995).

The Restatement defined a trade secret as:

any formula, pattern, device or compilation of information which is used in one's business, and which gives him an opportunity to obtain an advantage over competitors who do not know or use it. *Id.* at 721–722 (citing Rest. (First) of Torts Section 757 comment b.)

Further, the Restatement set forth six factors to be considered in the determination of whether given information constitutes a trade secret:

(1) the extent to which the information is known outside of his business;

(2) the extent to which it is known by employees and others involved in his business;

(3) the extent of measures taken by him to guard the secrecy of the information;

(4) the value of the information to him and to his competitors;

(5) the amount of effort or money expended by him in developing the information;

(6) the ease or difficulty with which the information could be properly acquired or duplicated by others.

*Id.* at 721–722.

Although the Restatement's factors are not part of the Uniform Trade Secrets Act, the act essentially incorporates these factors in its definition of trade secrets. Further, courts in states that have adopted the Act, have found that those factors provide guidance in determining whether the information in a given case constitutes trade secrets within the definition of the Act. *See e.g., Trandes Corporation v. Guy F. Atkinson Company,* 996 F.2d 655, 661 (4th Circuit 1993) (applying the Maryland version of the Uniform Trade Secrets Act); *Minuteman, Inc. v. Alexander,* 147 Wis.2d 842, 434 N.W.2d 773, 777 (1989).

The threshold issue which permeates all of plaintiff's points on appeal is whether the price book constitutes a trade secret. The existence of a trade secret is a conclusion of law based on the applicable facts. *Trandes,* 996 F.2d at 661

Although the price book is not part of the record on appeal, the evidence indicates that it is a detailed compilation of technical and non-technical data including customer contacts, specifications for each listed product, product numbers, material requirements and price information.

In addition to showing that the price book is a compilation of data, plaintiff produced evidence to show that the information in the book was subject to reasonable efforts to maintain its secrecy. Further, plaintiff established evidence to support that the price book derived independent economic value from not being generally

known to or readily ascertainable by proper means by others who can obtain economic value from its disclosure or use. We examine the restatement factors, as they are helpful in our inquiry. First, there is evidence that the information is not known outside of the business. Hans Hansen, who formerly worked for a competitor, and is currently an officer of plaintiff, testified that he did not know the details contained in the book until he began to work for plaintiff. Second, there is evidence to support that all of the information in the book was not independently known by employees, in that employees, even Dick who had worked for the company for many years, referred to the book for reference when giving pricing and specification information.

Third, Plaintiff presented witnesses who testified as to the measures taken to ensure confidentiality. There was testimony that employees knew the price book was confidential, that access was limited, it was locked in an office at night and old copies were shredded. There was evidence that the price book was not taken from the office except during sales calls. Gary Hahn, the technical support engineer, was the only person with the capability to print it.

■ Defendants point to the fact that the price book was not stamped as confidential as evidence that the price books were not confidential and thus not trade secrets. The lack of a confidential stamp is not dispositive here, as there are other indications, previously indicated, that the book was treated confidentially. Further, defendants argue that the price book was not intended by plaintiff to be confidential, nor treated as such as no confidentiality agreements were signed by plaintiff's employees having access to the price book. While the existence of a confidentiality or noncompete agreement may be further evidence of the book's confidentiality, the lack of such agreements is not conclusive, as officers of a corporation owe independent fiduciary duties to the corporation to protect trade secrets from disclosure. *See, A.B. Chance Co. v. Schmidt,* 719 S.W.2d 854, 859 (Mo.App. W.D.1986).

Fourth, the information in the book would be valuable to competitors, as is established by the testimony of Hans Hansen and by the statement of defendant Dick, who admitted that it would be advantageous to a competitor at least in terms of pricing. Fifth, the book represented a compilation of many years of experience in the business of manufacturing insoles and thus a great deal of time and effort was obviously expended in its preparation. Finally, the specifications and price information could not be easily duplicated or properly acquired by others. Hans Hansen testified that he did not know of the information in the price book before he began to work for plaintiff. Even Dick, who had worked in pricing and specifications for many years using plaintiff's price book could not correctly state the specifications of the insoles made for one of Walk Easy's major customers. Additionally, the evidence showed that it would take a year or more to recreate the information contained in the price book. These factors, taken together are sufficient to show that the price book is a trade secret.

■ In addition to establishing that the price book is a trade secret, plaintiff must produce sufficient evidence to support a finding that defendants misappropriated it. Plaintiff has proven this by showing that defendants used a trade secret of plaintiff's (the price book), without the consent of plaintiff and that defendants used improper means to acquire the trade secret. Plaintiff has already established that the price book was a trade secret and it did not consent to its use by defendants in competition with plaintiff. There is evidence that the price book was acquired by improper means, as plaintiff presented testimony that the book was never taken from plaintiff's premises except to make sales calls and was immediately returned. Even if Dick had authority to keep the book at home, he was under an obligation

to return it after leaving the business, pursuant to his fiduciary duties as an officer of plaintiff to maintain plaintiff's trade secrets and not to use plaintiff's property for his own benefit to the detriment of plaintiff. By not returning the book and further taking it to Walk Easy's office, Dick misappropriated the book. Although the evidence does not show whether the other defendants participated in the removing of the book from plaintiff's premises, they used the price book or allowed it to be used for the benefit of Walk Easy, while knowing or having reason to know that it was a confidential, nonpublic price book belonging to plaintiff. Further, it was acquired when Dick, Wayne and Convy had a fiduciary duty to maintain its secrecy. Defendants' actions amounted to a breach of that duty.

Since plaintiff has established facts sufficient to support a finding that the book was a compilation of data, deriving independent economic value and the subject of reasonable efforts to maintain secrecy, and that the individual defendants, who were officers of plaintiff misappropriated plaintiff's trade secrets by taking the price book and using it for the benefit of defendant Walk Easy, the trial court erroneously applied the law and erred in directing a verdict against plaintiff on the misappropriation count.

In its second point, plaintiff contends that the trial court erred in sustaining defendant's motion for a directed verdict on its claim for damages for tortious interference with a business expectancy, on the basis that plaintiff had not established an absence of justification for defendants actions. Plaintiff alleges that it presented evidence supporting its claims by showing that defendants misappropriated valuable trade secrets of plaintiff and used such to cause plaintiff to lose business. Defendants respond that they were justified in their actions as legitimate competition, as their acts did not constitute misappropriation of a trade secret.

■ Tortious interference with a contract or business expectancy requires proof of: (1) a contract or valid business expectancy; (2) defendant's knowledge of the contract or relationship; (3) a breach induced or caused by defendant's intentional interference; (4) absence of justification; and (5) damages. *Rice v. Hodapp,* 919 S.W.2d 240, 245 (Mo.1996).

■ Here, the evidence supports a finding that defendants tortiously interfered with plaintiff's business expectancies. Further, we find the defendants' defense of justification is not meritorious. While lawful competition would be a defense, competing by improper means, including use of a misappropriated trade secret obtained in violation of a fiduciary duty is not a valid justification. *See Briner Electric Co. v. Sachs Electric Co.,* 680 S.W.2d 737, 741 (Mo.App. E.D.1984).

In its third point, plaintiff contends that the trial court erred in sustaining defendants' motion for directed verdict on its claim of conspiracy. Plaintiff alleged that it presented sufficient evidence to prove that defendants had conspired to misappropriate the trade secrets of plaintiff and to use them to interfere with plaintiff's business expectancy with its customers. Defendants alleged that plaintiff failed to show an unlawful act and an agreement to perform that act.

■ A civil conspiracy is an agreement between two or more persons to perform an unlawful act, or to use unlawful means to do an act which is lawful. *Schott v. Beussink,* 950 S.W.2d 621 (Mo.App. E.D.1997). To establish a claim for civil conspiracy, the plaintiff must plead sufficient facts to support the following elements: 1) two or more persons; 2) an object to be accomplished; 3) a meeting of minds on the object or course of action; 4) one or more unlawful acts; and, 5) damages. *Id.* The term unlawful, as it relates to civil conspiracy, is not limited to conduct that is criminally liable, but rather may include individuals associating for the pur-

pose of causing or inducing a breach of contract or business expectancy. *Id.*

 Here, plaintiff has presented evidence to support its claim that defendants acted unlawfully in misappropriating plaintiff's price book, a trade secret, and using the price book to solicit plaintiff's customers to buy identical products from defendant Walk Easy. Defendants' agreement to misappropriate plaintiff's trade secrets and interfere with its business expectancy is also evidenced by the fact that defendants reaped the benefits of the trade secrets by having the price book on the premises and available for use and by the fact that defendants did use the book to obtain customer contacts, insole specifications and to attract plaintiff's customers with product prices pennies less than plaintiff. The trial court erred in directing a verdict against plaintiff on the conspiracy count also.

Judgment reversed and remanded.

GARY M. GAERTNER, P.J. and JAMES R. DOWD, J., concur.