Martha Ann **BELL** and Monica Elite Egson, Plaintiffs/Respondents,

v.

**LAFONT AUTO SALES** and Pat Lafont, Defendants/Appellants.

No. **ED 79762.**

Missouri Court of Appeals,
Eastern District,
Southern Division.

July 16, 2002.

Motion for Rehearing and/or Transfer to Supreme Court Denied Aug. 29, 2002.

Application for Transfer Denied
Oct. 22, 2002.

Jonah T. Yates, Osburn, Hine, Kuntze & Yates, L.L.C., Cape Girardeau, MO, for respondents.

Mark S. Johnson, Johnson & Stark, L.L.C., Cape Girardeau, MO, for appellant.

KATHIANNE KNAUP CRANE, Judge.

Plaintiffs, automobile purchasers, sought damages from defendants, an automobile dealer and its owner, in an action for conversion, arising out of the repossession of the two automobiles plaintiffs purchased under retail installment contracts. The

trial court awarded damages that exceeded the amount of plaintiffs' equity interest in the fair market value of the automobiles and the amount of consequential damages established by the evidence. Defendants appeal. We affirm the judgment with respect to liability but reverse the award of damages and remand for a new trial on damages.

We view the evidence in the light most favorable to the judgment. On March 15, 2000, plaintiff, Martha Bell, as buyer, entered into a retail installment contract and security agreement with defendant Lafont Auto Sales (dealer), as seller, to purchase a 1994 silver Cadillac. She made a net down payment of $3,500.00 and financed $10,174.41, the remainder of the purchase price. Monthly payments were $393.84, beginning on April 15, 2000.

On May 31, 2000, Ms. Bell and her daughter, plaintiff Monica Egson, as buyers, entered into a retail installment contract and security agreement with dealer, as seller, to purchase a 1995 Ford Mustang. They made a down payment of $5,000.00 and financed $7,035.00, the remainder of the purchase price. Monthly payments were $272.32 beginning June 30, 2000.

In both contracts plaintiffs gave dealer a security interest in the vehicles and agreed to pay dealer the principal amount and finance charges until the balance was paid in full. Seller assigned both contracts to another entity "with recourse." "With recourse" was defined in the contract as follows:

WITH RECOURSE: If this Assignment is made "with recourse" as indicated on page 1, Assignee takes this Assignment with certain rights of recourse against Seller. Seller agrees that if the Buyer defaults on any obligation of payment or performance under this Contract, Seller will upon demand, repurchase this Contract for the amount of the unpaid balance, including finance charges, due at that time.

Defendant Pat Lafont testified that dealer would have to pay the balance owed if a customer defaulted.

Each contract also contained the following provision:

OWNERSHIP AND DUTIES TOWARD PROPERTY: By giving us [defendant] a security interest in the Property, you represent and agree to the following:

\* \* \* \*

D. You will keep the Property in your possession in good condition and repair. You will use the Property for its intended and lawful purposes. *Unless otherwise agreed in writing, the Property will be located at your address listed on page 1 of this Contract.*

(emphasis added).

Plaintiffs resided at the address listed on both contracts, 510 S. Frederick, Cape Girardeau, Missouri, a home that plaintiffs rented. Plaintiffs lived at this address for six or seven years preceding the purchase of the automobiles. In August, 2000 plaintiffs' landlord informed them that he was terminating the lease because he was selling the house and gave them until September 30, 2000 to vacate.

On August 15, 2000 and August 22, 2000, plaintiffs rented, for a one-way trip, two U–Haul trailers. Thereafter, plaintiffs moved all of their possessions out of the Cape Girardeau house and put them in storage in Georgia where they intended to eventually move after returning to Missouri. Plaintiffs stayed at a motel in Georgia because they intended to return to Missouri. On August 26, 2000 dealer repossessed plaintiffs' automobiles in Georgia. Up until the time of possession, plain-

tiffs were current in their payments. At the end of August, 2000 plaintiffs rented an automobile and returned to Missouri. They paid $57.00 per day for a three-day automobile rental.

Ms. Bell testified to these events as follows:

Q. (attorney) And at that time, which was August of 2000, were you yourself actually moving to Georgia, or were you moving your possessions to Georgia?

A. (Ms. Bell) We weren't moving. We were moving, putting the stuff in storage.

\* \* \* \* \* \*

Q. And your intent was at a later date to move down there?

A. Yes.

Q. On August 26 of 2000 [the date of repossession], had you established an address and actually moved to some town in Georgia?

A. No.

Ms. Egson testified to these events as follows:

Q. (attorney) And [did you] move those things [personal belongings] down to Georgia?

A. (Ms. Egson) Yes.

Q. And did you come back to Missouri and specifically Cape Girardeau after taking those personal items down to Georgia and storing them?

A. Yes, yes. That were our intentions.

Q. And your intent wasn't for you to actually physically move yourself down to Georgia yet?

A. Not ... then. . . .

Q. And was it your intent to notify LaFont Auto Sales of where you were going to be moving?

A. Oh, definitely, definitely, definitely.

Q. When did you actually move to Georgia?

A. In October [of 2000].

Upon their return, defendants notified plaintiffs that they would be able to regain possession of their automobiles by paying the balance or by obtaining financing through a third party. Plaintiffs did neither and never regained possession of the automobiles. Plaintiffs remained in Missouri until October 15, 2000, at which time they permanently relocated to Georgia. At the time of trial, plaintiffs had in their possession a $2,100.00 check from an insurance company for damage to the Mustang.

Plaintiffs then filed this action seeking damages for conversion. Defendants filed a counterclaim for the deficiency resulting from defendant's resale of the repossessed automobiles at a lower price than the retail installment contract with plaintiffs. After a bench trial, the trial court found in favor of plaintiffs on all claims. It awarded Ms. Bell $10,000 in damages for conversion of the 1994 Cadillac and awarded Ms. Bell and Ms. Egson $9,500 in damages for conversion of the Mustang. No request for findings of fact was made, and none were entered. Defendants appeal the judgment in plaintiffs' favor on plaintiff's petition.

1. *Conversion*

For their first point, defendants contend that the trial court erred in finding that defendants converted plaintiffs' automobiles because defendants had a superior right of possession due to plaintiffs' breach of the installment sale contracts. Defendants argue that plaintiffs were in default on the contracts because they removed the vehicles from the address in the contract and moved to Georgia.

We will sustain the judgment of the trial court unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. *Murphy v. Carron,*

536 S.W.2d 30, 32 (Mo.banc 1976). In the absence of findings of fact or conclusions of law, we assume the trial court resolved all issues of fact in accordance with the result reached. *Id.;* Rule 73.01(a)(2).

 Conversion is the unauthorized assumption of the right of ownership over the personal property of another to the exclusion of the owner's rights. *Kennedy v. Fournie,* 898 S.W.2d 672, 678 (Mo.App. 1995). "Conversion may be proved in one of three ways: (1) by showing a tortious taking, (2) a use or appropriation by the defendant indicating a claim or right in opposition to the owner, or (3) a refusal to give up possession on demand." *Id.* Under any of these theories, a plaintiff must show title to, or a right of property in, and a right to the immediate possession of the property concerned at the alleged date of conversion. *Id.*

 Defendants argue that plaintiffs did not have an immediate right to possess the vehicles on the date that defendants repossessed them because plaintiffs were in default on their contracts in that they removed the cars from the address on the contracts, in violation of Paragraph D of the contracts. Although Mr. Lafont and one of his witnesses testified to facts indicating that plaintiffs had made a permanent move to Georgia, plaintiffs testified that, at the time the automobiles were repossessed, they had not permanently moved to Georgia but intended to and did return to Missouri. Ms. Egson testified that plaintiffs intended to give dealer notice when they were going to permanently move to Georgia. We defer to the trial court's resolution of conflicts in the evidence. *Gross v. Diehl Specialties Intern., Inc.,* 870 S.W.2d 246, 248 (Mo.App.1994). The trial judge believed plaintiffs' testimony that, on August 26, 2000, they had not moved to Georgia. Accordingly, the trial court did not err in finding that plaintiffs had not violated Paragraph D. Point one is denied.

## 2. Damages

 For their second point, defendants contend that the trial court improperly calculated plaintiffs' damages. The measure of damages in an action for conversion of personal property is generally the fair market value of the property at the time and place of the conversion. *Alpine Paper Co. v. Lontz,* 856 S.W.2d 940, 944 (Mo.App.1993). "Fair market value" is defined as the price that property will bring when it is offered for sale by an owner who is willing but under no compulsion to sell and is bought by a buyer who is willing or desires to purchase but is not compelled to do so. *Coffman v. Powell,* 929 S.W.2d 309, 312 (Mo.App.1996). Defendants argue that the fair market value should be reduced by plaintiffs' outstanding indebtedness to dealer on the automobiles and the $2,100.00 damage to the Mustang.

 In this case, plaintiffs had a possessory interest in the respective automobiles, however, they had outstanding indebtedness on both automobiles, and they had conveyed a security interest to dealer, which dealer assigned with recourse. Because dealer also had an interest or right in the automobiles, plaintiffs were not entitled to recover the full fair market value of the automobiles. The rule is stated as follows:

A plaintiff having only a special or qualified right or interest may recover the full value of the converted property, as against a stranger having neither title nor right of possession. As against a defendant having an interest or right in the property, however, the recovery is limited to the value of the plaintiff's

interest or right, and to the fair value of the property.

90 C.J.W. *Trover and Conversion* section 117 (2002) (citations omitted). Stated another way, "It is a principle of the law of trover and conversion that a plaintiff who has only a special property or qualified interest in the goods which have been converted can recover only the value of such property or interest." *Bruce v. Crysler,* 217 S.W. 563, 566 (Mo.App.1920). The court in *Bruce* quoted with approval the following headnote from *Davis v. Miller's Auction Rooms, Inc.,* 144 N.Y.S. 672, 672 (1913):

> "Where plaintiff delivered furniture to a dealer, who had some claim thereto for unpaid installments, giving it to him to be stored, and the dealer wrongfully sold the property to defendant, the dealer's rights passed to defendant, and, in an action for conversion, defendant is liable only for the value of the furniture above the amount owing the dealer."

*Bruce,* 217 S.W. at 566. It further quoted a paragraph from 2 SEDGWICK, MEASURE OF DAMAGES 391 as it appears in *Van Schaick v. Ramsey,* 35 N.Y.S. 1006, 1008 (1895):

> "There are many cases, however, where the plaintiff, though entitled to recover, is not at liberty to receive the full value of the property. So, in cases of pledge, if the pledgee tortiously sell the pledge, or otherwise wrongfully put it out of his power to return the article pledged, the pledgor's right of recovery is clear; but the pledgee in such action has a right to have the amount of his debt recouped in the damage."

*Bruce,* 217 S.W. at 566. In *Van Schaick* the court held that the trial court erred in awarding plaintiff the full value of converted stock, $10,000.00, when plaintiff had pledged one-half of the stock to secure a $5,000.00 loan from defendant which was still outstanding. The court held that

plaintiff's damages should have been limited to the actual amount of his interest in the stock at the time of conversion. 35 N.Y.S. at 1009.

Our supreme court applied these principles in *Russell v. Empire Storage & Ice Co.,* 332 Mo. 707, 59 S.W.2d 1061 (1933) with respect to cases of eggs on which the plaintiffs had borrowed $7,700.00. The court held, citing numerous authorities:

> "If these 1,100 cases of eggs were worth $11,880, as plaintiff's claim, $7,700 of that value was actually received by them when they borrowed that amount on them. If these eggs had been immediately either destroyed by defendant's negligence or converted by defendant to its own use, it would only have been liable to plaintiffs for the balance of that value, $4,180. This is good law and good sense, as well as good arithmetic, because that would be the amount plaintiffs were actually damaged."

59 S.W.2d at 1067.

■ This qualification on the measure of damages is not required to be raised as an affirmative defense or counterclaim, as plaintiffs argue. *Id.; Bruce,* 217 S.W. at 566. The amount of damages awarded to plaintiffs exceeded the value of their interests in the fair market value of the automobiles and the consequential damages in evidence. The trial court erred in its calculation of damages, which requires this case to be remanded.

■ On remand, the trial court should determine the fair market value of each automobile at the time of the conversion or within a reasonable time of the conversion. *See, Weldon v. Town Properties, Inc.,* 633 S.W.2d 196, 198 (Mo.App.1982); *Edlen v. Tweed,* 295 S.W.2d 397, 403 (Mo.App.1956). In so doing it should take into account the damage to the Mustang. The court should then determine the amount Ms. Bell owed

on the Cadillac and the amount Ms. Bell and Ms. Egson owed on the Mustang and deduct the amounts owed from the fair market value of the respective automobiles so that the award of damages is limited to plaintiffs' interest in the fair market value of the automobiles. Consequential damages may be awarded to the extent established by the evidence.

Plaintiff's motion to dismiss the appeal is denied. The judgment of the trial court on liability is affirmed; the damage award is reversed and remanded for a new trial.

JAMES R. DOWD, C.J. and
LAWRENCE G. CRAHAN, J. concur.