**IOS CAPITAL, LLC, Appellant,**

v.

**ALLIED HOME MORTGAGE CAPITAL CORPORATION, Respondent,**

and

**Kevin Crisp and Jim C. Hodge, Defendants.**

No. ED 84370.

Missouri Court of Appeals, Eastern District, Division One.

Nov. 16, 2004.

---

Thomas G. Berndsen, Law Office of Thomas G. Berndsen, P.C., St. Louis, MO, for appellant.

Kevin F. Hormuth, Greensfelder, Hemker & Gale, P.C., St. Louis, MO, for respondent.

GARY M. GAERTNER, SR., Presiding Judge.

Appellant, IOS Capital, LLC ("IOS"), appeals from the judgment of the trial court finding in favor of Respondent, Allied Home Mortgage Capital Corporation ("Allied"), on IOS' breach of lease and conversion claims. We affirm.

Allied is a Texas corporation licensed to do business in Missouri and forty-seven other states. Allied is in the business of originating and processing home mortgage loans. Allied had a branch office in Chesterfield, Missouri. Kevin Crisp ("Crisp") was officially hired as branch manager of the Chesterfield office on August 18, 2000.

IKON is a company that sells photocopy machines. IOS is a finance company that purchases the photocopy machines from IKON and then leases the equipment to customers under written lease agreements. IOS and IKON are not agents of each other.

On October 31, 2002, Christopher Lotspeich, an employee of IKON, presented a lease agreement, which contained the details of an agreement to lease a photocopy machine to Allied, to Crisp at Allied's Chesterfield office. Crisp signed the lease agreement that same day as "Kevin Crisp, Branch Manager" under a heading entitled "Authorized Signer For Customer." The lease agreement is between Allied and IOS, not IKON. IOS did not sign and accept the lease agreement until January 2, 2003. In a letter dated November 8,

2002, Crisp was notified that the Chesterfield branch office was closed, and that as a result he was terminated from his position as branch manager. On or about November 11, 2002, the copier was delivered to the Chesterfield branch office.

IOS never received any payments for the photocopy machine from Crisp or Allied. IOS filed suit against Allied, Crisp, and Jim Hodge, the President and Chief Executive Officer of Allied ("Hodge"), on August 27, 2003. Count one in the petition was a breach of the lease agreement claim, and count two against Allied was a conversion claim. Hodge was dismissed from the suit without prejudice on November 19, 2003. A bench trial took place on January 12, 2004. Crisp was dismissed from the suit without prejudice by IOS on the day of the trial. The parties stipulated that the amount of IOS' damages was $32,464.00. On March 5, 2004, the court entered judgment on both counts in favor of Allied, and assessed court costs against IOS. This appeal followed.

■ In reviewing a bench-tried case, the judgment will be affirmed unless there is no substantial evidence to support it, it is against the weight of the evidence, it erroneously declares the law, or it erroneously applies the law. *Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo.banc 1976).

In its first point on appeal, IOS argues that the trial court erred in holding that Crisp was not authorized to sign the lease agreement on behalf of Allied. IOS claims that Crisp had either express actual authority, implied actual authority, or apparent authority to sign the lease agreement on Allied's behalf.

■ In its first sub-point, IOS claims that Crisp had an express grant of actual authority to enter into the lease agreement on Allied's behalf.

■ Liability of a principal for the acts of an agent may occur as the result of an express grant of authority by the principal. *K & G Farms v. Monroe County Service Co.,* 134 S.W.3d 40, 43 (Mo.App. E.D.2003).

IOS supports the argument that Crisp had express authority to enter into the lease agreement by asserting that Allied's branch manual requires each branch office to obtain a photocopy machine. However, Crisp's employment agreement with Allied states:

> It is specifically understood and agreed that [Crisp] shall have no authority to act on behalf of, or to bind Employer with respect to any contract or agreement unless [Crisp] has first been otherwise so authorized in writing by one of the following officers of Allied Mortgage Capital Association.

It is clear from this language in the employment agreement that Crisp did not have express authority to enter into a lease agreement with IOS on Allied's behalf without the written approval of specified Allied officers. Crisp did not get approval from any of the officers listed in the employment agreement before purportedly entering into the lease agreement on Allied's behalf. Therefore, Crisp did not have express authority to enter into the lease agreement on Allied's behalf. Subpoint denied.

■ In its second sub-point on appeal, IOS argues Crisp had implied authority to enter into the lease agreement on Allied's behalf.

■ Implied authority is actual authority which the principal intended the agent to possess that lacks direct proof, but rather is implied from relevant facts and circumstances as reasonably necessary to accomplish the purpose or purposes of the expressly conferred authority. *Mark Century Corp. v. Tiger Broadcasting Co.,*

509 S.W.2d 737, 739 (Mo.App.1974). Implied authority concerns only the extent of an express authority actually granted. *Id.* If the agent does not have actual authority, then no authority can be implied. *Id.*

This claim that Crisp possessed implied actual authority to bind Allied to the lease agreement is without merit. As stated previously, it is clear from Crisp's employment agreement that he did not have express authority to enter into the lease agreement. Because IOS clearly indicated in the employment agreement that Crisp had no authority to enter into the type of lease agreement at issue without proper approval, no authority to enter into the agreement can be implied. Therefore, Crisp did not have implied authority to enter into the lease agreement on behalf of Allied. Sub-point denied.

■ In its third sub-point on appeal, IOS asserts Crisp had apparent authority to enter into the lease agreement on Allied's behalf.

■ Apparent authority is created by the conduct of the principal that causes a third party to develop a reasonable belief that another person has the authority to act for the principal. *Century Financial Services v. First Bank*, 996 S.W.2d 92, 94 (Mo.App. E.D.1999). In order to establish apparent authority, the party relying on this authority must demonstrate: (1) the principal consented or knowingly allowed the agent to exercise authority; (2) the person relying on such authority had a good faith reason to believe and actually believed the agent possessed authority; and, (3) the person relying on the authority changed his position and will be harmed if the principal is not bound by the transaction executed by the agent. *Ritter v. BJC*, 987 S.W.2d 377, 386 (Mo.App. E.D. 1999).

IOS argues that because Allied held Crisp out to the public as a branch manager, in charge of day-to-day management of the branch office, it was reasonable for a third party to believe Crisp had authority to bind Allied to a lease agreement for a copier.

The deposition of Steven Young, an IOS employee, was read to the court during trial. Young stated that IOS did not communicate with any Allied employees about the authority of Crisp to enter into the lease agreement prior to its execution. Claire Bynum, a financial sales specialist for IOS ("Bynum"), also testified that she did not know what IOS relied on in entering into the lease agreement. She further stated that Lotspeich, as an IKON employee who spoke with Crisp, was not an agent of IOS and that IKON and IOS are separate companies. Lotspeich testified that he did not know what IOS did to investigate Crisp's authority to sign the lease agreement. In sum, even assuming *arguendo* that it would have been reasonable for IOS to believe that Crisp, based on his title as branch manager, possessed authority to sign the lease agreement on behalf of Allied, there is no evidence in the record to support a finding that IOS actually relied on such authority when it executed the lease agreement. Therefore, it cannot be said that the court's finding that Crisp did not have apparent authority to enter into the lease agreement is against the weight of the evidence. Sub-point denied.

■ In its second point on appeal, IOS argues that the trial court erred in holding that Allied was not liable for conversion of the copier.

■ Conversion is the unauthorized assumption and exercise of ownership rights over the personal property of another party to the exclusion of the owner's rights. *Muir v. Ruder*, 945 S.W.2d 33, 35

(Mo.App. E.D.1997). The elements of a cause of action for conversion are: (1) the plaintiff was the owner of the property or entitled to possession of the property, (2) the defendant took possession of the property with the intent to exercise some control over it, and (3) the defendant thereby deprived the plaintiff of the right to possession of the property. *Id.*

There is evidence that IOS is the owner of the copier, because the lease agreement specifically says that: "We [IOS] are the sole owner and title holder to the Equipment." Bynum also verified that IOS bought the copier from IKON, and attempted to lease it to Allied. However, as mentioned earlier, Crisp did not have actual or apparent authority to bind Allied to the lease agreement he signed. Secondly, the copier was not even delivered to the Allied branch office until after the branch office was closed. Allied did not learn of the lease agreement and delivery of a copier until it received a demand letter from IOS dated August 18, 2003. Allied did not receive a copy of the lease until it was served with this lawsuit. The current location of the copier is unknown to both parties. While this court sympathizes with IOS' quest to recover their copier, after reviewing the record it simply cannot be said that Allied at any time took possession of the copier with the intent to exercise some control over it or deprived IOS of its right to possession. Therefore, the court did not err in holding that Allied was not liable for conversion. Point denied.

Based on the foregoing, we affirm the judgment of the trial court.

SHERRI B. SULLIVAN and BOOKER T. SHAW, JJ., concur.