**ENVIROTECH, INC., Appellant,**

v.

**Donald THOMAS, Claudia Thomas, Thomas Industrial Coatings, Inc., Thomas Equipment & Management Company, Riverfront Industrial Coatins, Inc., George Johnson, William Johnson, St. Louis Bridge Company and Thomas Industrial Coatings, LLC, St. Louis Bridge Construction Company, G.M. Johnson Companies, Inc., and SLBC, LLC, Respondents.**

**No. ED 89087.**

Missouri Court of Appeals,
Eastern District,
Division Two.

July 15, 2008.

John Davidson, St. Louis, MO, for appellant.

Sarah Rodeman, Michael McAvoy, Roger Pecha, Reiad Khouri, Mark Menghini, St. Louis, MO, for respondent.

NANNETTE A. BAKER, Judge.

### Introduction

Envirotech Inc. ("Envirotech") appeals the dismissal of its Second Amended Petition in the Circuit Court of Jefferson County. The trial court dismissed the petition with prejudice finding that Envirotech had "alleged no causal connection between any actions by the Defendant [sic] and any alleged damages suffered by the Plaintiff." On appeal, Envirotech contends that it did allege a causal connection between the actions of the Defendants and its damages. We reverse and remand.

### Factual and Procedural Background

On June 13, 2006, Envirotech filed a four-count Second Amended Petition against Defendants.[1] Envirotech's Second Amended Petition was more than 60 pages long,[2] with 80 pages of exhibits. In summary,[3] the petition alleged that:

---

1. Donald and Claudia Thomas, Thomas Industrial Coating, ("TIC") Thomas Equipment and Management Co. and Riverfront Industrial Coatings, Inc. were represented by the same attorney throughout the action and will be called collectively "TIC." St. Louis Bridge Construction Co., St. Louis Bridge Company, Thomas Industrial Coating, LLC, George M. Johnson, William Johnson, GM Johnson Companies, Inc., and St. Louis Bridge Construction Company, LLC, were represented by the same attorney throughout the action and will be called "St. Louis Bridge." Collectively, we will refer to all defendants as "Defendants."

2. Under Rule 55.05(1) a petition must contain a short plain statement of the facts showing that the pleader is entitled to relief. Envirotech's petition was not a short plain statement of the facts.

3. We have omitted facts and allegations that do not directly pertain to the question presented in this appeal, namely whether the trial court erred in dismissing the petition because Plaintiff failed to show causation.

To obtain the award of a $5.4 million Missouri Department of Transportation project, ("the Highway Project")[4] Defendants conspired to defraud the Missouri Department of Transportation. The Department of Transportation gives preferential treatment to bids involving certain businesses, known as "disadvantaged business enterprises." DKW Enterprises, which is not a party to this action, was a "disadvantaged business enterprise" for Department of Transportation bidding purposes.

St. Louis Bridge Company[5] bid on the Highway Project and included DKW in its bid as a subcontractor. The contact was awarded to St. Louis Bridge. However, DKW never performed any work on the project. The work that DKW was contracted to perform was actually performed by TIC.[6] TIC was not a "disadvantaged business enterprise." In an attempt to hide TIC's work on the project, employees obscured TIC logos on their trucks and otherwise represented themselves as DKW employees throughout the project.[7]

Meanwhile, DKW was the general contractor on a project at the St. Louis Renaissance Hotel ("the Hotel Project"). DKW hired Envirotech as its sole subcontractor to do interior demolition on the Hotel Project. During the time Envirotech worked on the Hotel Project, the work schedule was accelerated and DKW otherwise made it difficult for Envirotech to perform its duties. DKW withheld payment from Envirotech.

Envirotech substantially completed its work under the contract. DKW certified that Envirotech's work was 95% complete on March 12, 2001, and projected the completion date as March 20, 2001. However, Defendants induced DKW to force Envirotech to be unable to perform. DKW failed to provide Envirotech with water to complete the work. DKW also demanded that Envirotech work on holidays and weekends and DKW accelerated Envirotech's work schedule, increasing Envirotech's costs. Because of DKW's actions, induced by Defendants, Envirotech did not complete the work on March 20, 2001.

On April 2, 2001, DKW terminated Envirotech. DKW did not properly give Envirotech termination notice as set out in the contract. DKW also withheld a $2.3 million payment and hired TIC to finish the job. DKW then falsely accused Envirotech of defaulting on the subcontract and made a false claim on Envirotech's surety, causing the surety to stop issuing bonds for Envirotech on new projects.

Envirotech alleged that Defendants instigated this scheme in order to funnel money to TIC. Although DKW was being paid for work on the Highway Project, TIC actually performed the work. Defendants could not directly pay TIC for its work on the Highway Project, because that would leave a "paper trial" that could

---

**4.** Project number J6I0985G.

**5.** St. Louis Bridge Company was also known as St. Louis Bridge Construction Company and St. Louis Bridge Construction Company, LLC. St. Louis Bridge was owned by Defendants GM Johnson Companies, Inc., George M. Johnson and William Johnson.

**6.** St. Louis Bridge owned 50% of TIC. TIC, Inc. was owned and controlled by Donald and Claudia Thomas. Thomas Equipment and Management Company was also owned by the Thomases. Riverfront Industrial Coatings, Inc. was owned or controlled by Claudia Thomas and was considered a female-owned "disadvantaged business enterprise" engaging in industrial painting.

**7.** After an investigation, the Missouri Department of Transportation found that DKW had no commercially useful function in the project and that St. Louis Bridge should be assessed fines. Plaintiff attached a copy of the findings to the Second Amended Petition.

be followed by state or federal investigators. Thus, the Defendants induced DKW to hire Envirotech to substantially complete the work on the Hotel Project, then terminated Envirotech and hired TIC. DKW overpaid TIC for its work on the Hotel Project, thereby untraceably compensating TIC for its work on the Highway Project. DKW also converted Envirotech's tools and supplies from the Hotel Project for TIC's use on the Hotel Project.

Envirotech's petition was based on the foregoing allegations. More specifically, the petition (incorporating all above facts) alleged in Count One, titled "Combination to Injure or Destroy Envirotech's Business," that the Defendants conspired with DKW "to injure or destroy Envirotech's business." Envirotech alleged that on December 9, 2000 it was hired by DKW to do demolition work on the Hotel Project, and the agreement was embodied in a written contract on January 3, 2001. However, DKW never intended to be bound by the contract because it had agreed with Defendants to wrongfully terminate Envirotech and replace Envirotech with TIC. In paragraphs 144–149, Envirotech specifically alleged:

> knowing that...DKW had hired Envirotech to perform millions of dollars in interior demolition, lead and asbestos abatement work at the Gateway Renaissance Hotel, Defendants herein caused and induced DKW to terminate and stop paying Envirotech for the reasonable value of such services on and after April 2, 2001, without lawful justification or excuse. In furtherance of the conspiracy, after April 2, 2001, DKW refused to pay any of the amounts due to Envirotech for the reasonable value of Envirotech's work...terminating Envirotech in the manner in which DKW acted and then notifying Envirotech's bonding company, the Defendants intended to cause such damage [to] Envirotech that Envirotech would fail as a business and

because of such failure be unable to discover the reason for its termination—so that DKW could hire TIC and launder the proceeds for the [Highway] Project, through overpayments for TIC's work on the [Hotel Project] project...

In the second count, titled "Interference with Prospective Advantage," Envirotech alleged that DKW created a valid business expectancy when it hired Envirotech. Envirotech substantially completed the work, but Defendants caused and induced DKW to terminate Envirotech on April 2, 2001, without lawful justification or excuse, so that DKW could hire TIC to replace Envirotech. Defendants further induced DKW to refuse to pay Envirotech for the work it had already performed.

In Count Three, Envirotech alleged "Conspiracy to Breach and Tortious Interference with Contract." Envirotech included specific contents of the December 9, 2000, contract and specific instances of breach by DKW. One such allegation is that DKW forced Envirotech to work more than eight hours per day, on Saturdays and on Sundays, but refused to compensate Envirotech for overtime. However, within days of terminating Envirotech, TIC began working at the site and was paid "overtime rates." Envirotech contends that the motivation for such breaches of the contract was an attempt to force Envirotech to "fail" so that DKW could hire TIC. Envirotech alleged that DKW's actions were induced by Defendants.

In its fourth count, Envirotech alleged "Conspiracy to Breach and Tortuous Interference with Contract" "in the alternative to Counts 1, 2, and 3." In this count Envirotech alleged breach of a September 18, 1999, contract between Envirotech and DKW. Envirotech alleged that it performed all work associated with the contract by March 2000, but DKW did not pay Envirotech for such work. Envirotech al-

leged that Defendants induced DKW to refuse to pay Envirotech "so as to help create a cover story so that DKW could hire TIC" and launder the proceeds of the Highway Project.

Also in the petition, although not in a separately numbered count, Envirotech alleged:

At the time DKW terminated Envirotech, DKW seized tools, equipment, and supplies of Envirotech which were on the Gateway job site, converting such to the use of DKW and TIC. Although Envirotech demanded a return of its tools, equipment and supplies, DKW or TIC or both used Envirotech's wrongfully seized tools, equipment and materials during TIC's work on the Gateway Renaissance Hotel.

After Envirotech filed its Second Amended Petition, Defendants filed motions to dismiss. St. Louis Bridge argued, *inter alia,* that the Second Amended Petition failed to prove a proximate cause "between [Envirotech's] alleged contract damages and the St. Louis Bridge Defendant's alleged conspiratorial acts on a project wholly unrelated to Plaintiff's project." TIC argued, *inter alia,* in its motion that Envirotech's petition failed to state a claim because "Plaintiff has alleged no theory of causation which can be attributed to the conduct of the Thomas Defendants." It also alleged that Envirotech commingled causes of action within the petition.

The court heard the motions on November 15, 2006 and dismissed Envirotech's Second Amended Petition *with* prejudice, stating only "The plaintiff has alleged no causal connection between any actions by the Defendant [sic] and any alleged damages suffered by the Plaintiff."

Envirotech appealed. On appeal, Envirotech claims that the trial court erred in dismissing its Second Amended Petition on the grounds that it alleged no causal connection because (a) Envirotech did plead

that it was damaged by one or more unlawful acts of a co-conspirator, done in furtherance of the conspiracy and the acts of one conspirator are the acts of all conspirators, for which all parties to the conspiracy are jointly and severally liable; and (b) Envirotech pleaded all five elements of a civil tort conspiracy. In its second point, Envirotech argues that the trial court erred in dismissing its petition on the grounds that it alleged no causal connection because it was an erroneous application of law in that Envirotech pleaded that all defendants participated by ordering, inducing or encouraging DKW, thereby aiding and abetting DKW in some way. In its final point, Envirotech argues that the trial court erred in dismissing its petition for failing to allege a causal connection because Envirotech pleaded a causal connection by alleging that TIC participated in the conversion of Envirotech's tools, equipment and materials during its work on the Hotel Project.

### Standard of Review

In reviewing a motion to dismiss for failure to state a claim, we must assume all of plaintiff's averments are true and give the plaintiff the benefit of every reasonable inference therefrom. *Gettings v. Farr,* 41 S.W.3d 539, 540–41 (Mo.App. E.D.2001). No attempt is made to weigh the facts as to whether they are credible or persuasive. *Id.* at 541. Instead, we review the petition to determine whether the facts alleged meet the elements of a recognized cause of action, or a cause that might be adopted in that case. *Id.* If the allegations invoke the principles of substantive law entitling the plaintiff to relief, the petition should not be dismissed. *Id.*

### Discussion

First, we note that Envirotech's petition, and its appellate brief are far from

ideal in execution. The petition is unduly lengthy, repetitive and disorganized. The appellate briefs do not comply with Rule 84.04 in several respects. However, we do not find, as Defendants urge, that the petition and briefs are insufficient to the point that they require dismissal. Although both could be greatly improved, we are able to discern Envirotech's arguments on appeal and identify viable causes of action asserted in the petition. Defendant's motion to dismiss, taken with the case, is denied.

### Civil Conspiracy

■■■ Envirotech's claims are based on the allegation that the Defendants were involved in a civil conspiracy. A civil conspiracy is an agreement or understanding between two or more persons to do an unlawful act, or to use unlawful means to do an act which is lawful. *Gettings*, 41 S.W.3d at 541. Strictly speaking, the fact of conspiracy is not actionable, but the action sounds in tort and is in the nature of an action on the case upon the wrong done under the conspiracy alleged. *Id.*

■■■ To establish a claim for civil conspiracy, some Missouri cases state that the plaintiff must plead sufficient facts to support the following elements: "(1) two or more persons; (2) an object to be accomplished; (3) a meeting of minds on the object or course of action; (4) one or more unlawful[8] acts; and, (5) damages." *Lyn-Flex West, Inc. v. Dieckhaus*, 24 S.W.3d 693, 700 (Mo.App. E.D.1999). Other cases state the elements of civil conspiracy as: "(1) two or more persons; (2) with an unlawful objective; (3) after a meeting of the minds; (4) committed at least one act in furtherance of the conspiracy; and, (5) the plaintiff was thereby damaged." *Crea-*

*tive Walking, Inc. v. American States Ins. Co.*, 25 S.W.3d 682, 688 (Mo.App. E.D. 2000).

Thus, it appears that the unlawfulness element can be found in either the ends sought or the means used. See 34 Mo Prac. 16:2 (2007). Here, Envirotech has alleged unlawfulness in both the ends sought, defrauding the State of Missouri, and the means used, i.e. interference with a business expectancy, interference with/ breach of a contract, conversion, etc.

■■■ In civil conspiracy, each tortfeasor is jointly and severally liable and each defendant is made responsible for the acts of the other done "in pursuance of the common design." *Gettings*, 41 S.W.3d at 541. But a conspiracy does not give rise to a civil action unless something is done pursuant to which, absent the conspiracy, would create a right of action against one of the conspirators. *Id.* at 541–542. The fact that there was a conspiracy merely creates joint and several liability for the defendants. See *Id.* "Joint action may be maintained against conspirators for damages caused by their wrongful act, but all the conspirators need not be joined; an action may be maintained against but one." *Grubb v. Curry*, 72 S.W.2d 863, 864 (Mo. App. St. Louis 1934).

■■■ If the underlying wrongful act alleged as part of a civil conspiracy fails to state a cause of action, the civil conspiracy claim fails as well. *Gettings*, 41 S.W.3d at 542. However, this does not mean that the plaintiff must be the object of the conspiracy. *Id.* "Rather, it means the plaintiff must allege and prove he was damaged as a result of the tortious act of one or more of the alleged conspirators and that the tortious act occurred in pur-

---

**8.** The term unlawful, as it relates to civil conspiracy, is not limited to conduct that is criminally liable, but rather may include individuals associating for the purpose of causing or inducing a breach of contract or business expectancy. *Lyn–Flex West, Inc. v. Dieckhaus,* 24 S.W.3d 693, 700–701 (Mo.App. E.D. 1999).

suance of the conspiracy." *Id.* A case will be dismissed if the plaintiff failed to plead a cause of action for the underlying tort. *See Williams v. Mercantile Bank of St. Louis NA*, 845 S.W.2d 78, 85 (Mo.App. E.D.1993).

■ Conspiracy to breach a contract has been long recognized as a plausible civil conspiracy claim in Missouri. See *Contour Chair Lounge Co., Inc. v. Aljean Furniture Mfg. Co.*, 403 S.W.2d 922, 926 (Mo.App. St. Louis 1966). Similarly, a conspiracy to injure or destroy the trade, business or occupation of another is an unlawful conspiracy. *Id.*

■ To properly plead his case, a plaintiff seeking joint and several liability for an act committed in furtherance of an unlawful conspiracy must plead two things. He must plead the underlying unlawful act which damaged him. He must also plead the civil conspiracy, which allows him to hold the defendants jointly and severally liable for damages caused by actions taken in furtherance of the conspiracy.

### *Causation*

■ All three of Envirotech's points on appeal assert different reasons that the trial court erred in dismissing Envirotech's

Second Amended Petition on the grounds that Envirotech alleged "no causal connection between any actions by the Defendant [sic] and any alleged damages suffered by the Plaintiff." The first two points address similar issues and will be taken together. In its first point, Envirotech argues that the trial court erred in finding that it had not alleged a causal connection because (1) Envirotech pleaded that it was damaged by unlawful acts of DKW, a co-conspirator, done in furtherance of the conspiracy and (2) Envirotech pleaded all elements of civil conspiracy.

■ More specifically, Envirotech argues that the trial court failed to follow the *Pinkerton*[9] doctrine in that it dismissed the petition "because Envirotech did not allege that its damages were caused by the actions of the present defendants" and because DKW was not a party to the action. Although the Defendants made these arguments to the trial court,[10] it is not clear why the court ruled there was no proximate causation. The court's order simply stated that "[t]he plaintiff has alleged no casual connection between any actions by the Defendant [sic] and any alleged damages suffered by the Plaintiff." [11]

---

9. *Pinkerton v. United States*, 328 U.S. 640, 66 S.Ct. 1180, 90 L.Ed. 1489 (1946). Envirotech characterizes the *Pinkerton* doctrine as "the act of any one conspirator is the act of all." This doctrine does not seem to be at issue in this case. Rather, the issues are whether Envirotech can hold Defendants jointly and severally liable for DKW's actions if DKW is not a party to the case, and if the trial court can make factual determinations in a motion to dismiss. Therefore, we do not address *Pinkerton* and its applicability.

10. TIC argued in its motion to dismiss that Envirotech's "alleged harm was caused by DKW and not the Defendants." TIC argues in its appellate brief that Envirotech failed to show "proximate causation" because "all of the actions alleged to have caused Envirotech's damages were taken by DKW, *a non-*

*party to this action.*" (Emphasis added). St. Louis Bridge offered similar arguments.

11. Clearly it would be error to find lack of proximate causation because DKW was not a party to the action. As we have explained, proof of civil conspiracy allows a plaintiff to hold a defendant liable for the wrongful act *of another*, if that wrongful act was committed in furtherance of an illegal conspiracy. All conspirators need not be joined in an action to hold any of the conspirators liable, because conspiracy results in joint and several liability. See *Grubb*, 72 S.W.2d at 864. Defendants could be liable for DKW's wrongful acts if Envirotech can prove (1) the wrongful acts and (2) that DKW committed those wrongful acts in furtherance of an illegal conspiracy with Defendants. Therefore, Failing to join DKW would not defeat Envirotech's claim.

"A key issue in determining proximate cause is whether the negligence was the efficient cause that set in motion the chain of circumstances that led to the plaintiff's injuries or damages. A related issue is whether the injuries and damages to the plaintiff appear to be a reasonable and probable consequence of the act or omission of the defendant." See 34 Mo. Prac. 2:6. "Proximate cause requires something in addition to a but for causation test to exclude causes upon which it would be unreasonable to base liability upon because they are too far removed from the ultimate injury or damage." *Alcorn v. Union Pac. R.R. Co.*, 50 S.W.3d 226, 239 (Mo.2001)(Internal quotations omitted). "An element of this examination is foreseeability, but with the advantage of hindsight." *Id.* In reference to proximate cause, "foreseeability refers to whether a defendant could have anticipated a particular chain of events that resulted in injury or the scope of the risk that the defendant should have foreseen." *Id.* It is not necessary that a defendant anticipate the exact injury complained of or anticipated that it would have happened in the manner that it did. *Id.* All that is necessary is that the defendant knew or should have known that there was "an appreciable chance that some injury would result." *Id.* (Internal quotations omitted.)

Proximate cause is generally an issue in cases involving negligent torts and centers around foreseeability. It seems axiomatic that proximate cause is not generally an issue in intentional tort cases such as this. Envirotech alleged that Defendants *intended* to cause Envirotech's injuries and *intended* to defraud the state of Missouri. This allegation is at odds with the idea that Defendants are "too far removed from the ultimate injury or damage" to hold them liable. If Defendants' actions were intended to defraud the State of Missouri or intended to injure Envirotech, the damages certainly "appear to be a reasonable

and probable consequence of the act...of the defendant." Taking Envirotech's allegations as true, Defendants should have known that there was an appreciable chance that Envirotech would be injured by their actions.

More specifically, Envirotech alleged specific causal links. Envirotech alleged, *inter alia,* that Defendants induced DKW to: (1) accelerate the project; (2) withhold progress payments and other payments, and make false set offs; (3) wrongfully terminate Envirotech after it had substantially completed its work, and after DKW had certified that Envirotech had completed 95% of the contract; (4) wrongfully give notice of default to Envirotech's bonding company; (5) enter into a contract with Envirotech knowing it will breach; and (6) convert Envirotech's tools, equipment and supplies for its and TIC's use. These allegations establish a direct link between Defendants' conduct and Envirotech's damages.

TIC cites *Messman v. Riss & Co.*, 255 S.W.2d 80, 82 (Mo.App. St. Louis 1953), in support of its argument that Envirotech failed to allege proximate causation. In *Messman,* the appellate court upheld the trial court's dismissal of a conspiracy claim because it found that the plaintiff's alleged damage was unrelated to the alleged conspiracy. *Messman,* however, is factually distinguishable from this case.

In *Messman* the plaintiff attempted to hold the defendant liable for another's gasoline bill by way of asserting a conspiracy between the two for illegally sharing highway permits. See *Id.* However, there was no alleged conspiracy "to obtain credit for the sale of gasoline or motor oil." *Id.* at 83. Instead, the object of the alleged conspiracy was to "operate trucks on the highway ... without ... securing the requisite permits." *Id.* at 82–83. Indeed, there was no allegation that the defendant

was injured by the alleged permit conspiracy. See *Id.*

■ Here, however, Envirotech specifically alleged that it was injured by Defendants' actions taken in pursuit of their conspiracy to defraud the State of Missouri. Envirotech also alleged that Defendants conspired with the object of injuring Envirotech.[12] Either of these types of allegations provides a direct causal link between Defendants and Envirotech's damages.

### Factual Arguments

■ Both TIC and St. Louis Bridge interjected multiple factual arguments into their motions to dismiss, appellate briefs and oral argument as if the trial or appellate courts were supposed to weigh credibility and make findings. However, because this case was dismissed on the pleadings, neither the trial court nor this court can weigh the facts.

■ When determining whether to dismiss a case, we review the petition to determine whether the facts alleged meet the elements of a recognized cause of action, or a cause that might be adopted in that case. *Gettings,* 41 S.W.3d at 541. A court should make no attempt to weigh the facts as to whether they are credible or persuasive. *Id.* Thus, factual arguments have no place in this case at this stage of the proceedings.[13]

We will not extend this opinion by addressing all factual arguments made by the parties. Suffice it to say that weighing credibility or determining which allegations are "fabricated" would be a misappli-

cation of the law, so all such arguments are rejected. Perhaps Envirotech will be unable to prove the allegations asserted. Envirotech *alleged* that Defendants caused its damages by inducing DKW to take certain actions, in pursuance of an illegal conspiracy. Our inquiry into the facts must end there.

■ Specifically, we will address St. Louis Bridge's argument that "Appellant may have been entitled to seek breach of contract damages against DKW for [accelerating the contract], however, such relief does not fit within Appellant's alleged conspiracy." If, as St. Louis Bridge acknowledges, Envirotech is "entitled to seek" breach of contract damages against DKW, it follows that it is also "entitled to seek" damages against Defendants for their involvement in a conspiracy wherein DKW was induced to breach the contract. It is no defense that there is an available action against DKW, since all conspirators are joint wrongdoers and each is liable for the loss. *See Byers Bros. Real Estate & Ins. Agency, Inc., v. Campbell,* 329 S.W.2d 393, 397 (Mo.App.K.C.1959).

### TIC's Brief

In its brief, TIC does not follow Envirotech's points relied on, but asserts multiple additional grounds to affirm the dismissal. In addition to proximate causation of the conspiracy claims, TIC attacks the underlying claims set forth in the pleadings, arguing that Envirotech failed to state claims upon which relief can be granted. To properly plead a case for civil conspiracy against Defendants, Envirotech must

---

12. We note that Envirotech's petition would be sufficient, even if it had not alleged that Defendants intended to injure it. The plaintiff need not be the object of the conspiracy. It is sufficient for the plaintiff to allege that it was damaged as a result of actions taken in furtherance of the unlawful conspiracy. See *Gettings,* 41 S.W.3d at 542.

13. St. Louis Bridge emphasizes that the plaintiff must prove the elements of a civil conspiracy claim "by clear and convincing evidence." *See, e.g., Koehler v. Warren Skinner,* 804 S.W.2d 780, 782 (Mo.App. E.D.1990). This argument relates to the burden of proof, which is also misplaced at this stage of the proceedings.

plead all elements of the underlying claims for damages, as well as all elements of civil conspiracy. See *Gettings,* 41 S.W.3d at 542.

 In its motions to dismiss, TIC argued only that Envirotech failed to allege causation. However, failure to state a claim upon which relief can be granted is a jurisdictional defect and can be raised at any time. *Lone Star Industries, Inc. v. Howell Trucking Inc.,* 199 S.W.3d 900, 905 (Mo.App.E.D.2006). Thus, we have jurisdiction to review these claims on appeal.

> However, when a challenge to a pleading for failure to state a claim is brought for the first time on appeal, the pleading will be more liberally construed than if the challenge was made via a motion to dismiss. The purpose of pleadings is to present, define, and isolate the issues, so that the trial court and all parties have notice of the issues. When an attack on the sufficiency of a petition is made for the first time on appeal, the pleading will be held good unless it wholly fails to state a claim. In this determination, the petition will be given its fullest intendment as a claim for relief.

*Lone Star Industries,* 199 S.W.3d at 905. (Internal citations omitted.) It is with these principles in mind that we examine TIC's related points.

 In its second point, TIC argues that Envirotech failed to state a claim in Count II, titled "Interference With Prospective Advantage." TIC states, and we agree, that this claim is for interference with a business expectancy. "A claim for tortious interference with a contract or business expectancy requires proof of each of the following: (1) a contract or a valid business expectancy; (2) defendant's knowledge of the contract or relationship; (3) intentional interference by the defen-

dant inducing or causing a breach of contract or relationship; (4) absence of justification; and (5) damages resulting from defendant's conduct." *Downey v. McKee,* 218 S.W.3d 492, 497 (Mo.App. W.D.2007). "Absence of justification refers to the absence of a legal right to justify actions taken." *Id.*

 TIC argues that Envirotech failed to allege that Defendants' actions were done "without justification" or by "improper means." TIC cites *Schott v. Beussink* for the proposition that "a defendant is justified in interfering with a prospective business advantage unless he or she uses improper means to do so." 950 S.W.2d 621, 628 (Mo.App. E.D.1997).[14] This is an overgeneralization of the applicable law, and this principle does not apply to TIC.

 The language in *Schott* originates from *Lick Creek Sewer Systems v. Bank of Bourbon,* which adopts the proposition that "where both the plaintiffs and defendants are parties to the contract, the defendants' breach is not the basis of a cause of action for tortious interference with a business or contractual relationship." 747 S.W.2d 317, 322 (Mo.App.E.D.1988). The court in *Lick Creek* notes that "Missouri courts have stated that a defendant who has a valid, existing economic interest in a contract is justified in inducing its breach, unless the defendant uses improper means to induce the breach." *Id.* Thus, a defendant does not have a presumption of justification, unless the defendant is also a party to the contract. Here, none of the Defendants were parties to the contract that was allegedly breached. Therefore, they cannot assert a presumption of justification in interfering with the contract or the business expectancy created by it.

 In this same point, TIC also argues that Envirotech "provided only bare

14. The exact language of *Schott* reads "A defendant is justified in inducing a contract's breach, unless the defendant uses improper means to induce the breach."

bones conclusions" and has not alleged "why any alleged inducement was done without just cause or by improper means." To the contrary, how and why Defendants' actions were illegal and improper takes up the majority of the sixty-page petition. In sum, Envirotech alleges that Defendants induced DKW to breach the contracts, interfered with Envirotech's business, and converted its tools in order to further a conspiracy to *defraud the State of Missouri*. This allegation, if proven, would establish improper means.

■ TIC completes its second point with another argument that Envirotech has failed to prove that its damages were proximately caused by Defendants. It argues that Envirotech alleged that Defendants "encouraged" DKW to breach the contract, but does not allege that this encouragement was the *cause* of the breach. In fact, Envirotech alleged that Defendants "induced" DKW to breach the contract. Induce, as defined in Missouri caselaw, is "to move and lead (as by persuasion or influence), to inspire, call forth or bring about by influence or stimulation." *Tri–Continental Leasing Co. v. Neidhardt*, 540 S.W.2d 210, 215 (Mo.App. St. Louis 1976). "The concept of causation is inherent within the meaning of inducement." *Id.* Thus, the allegation of "inducement" is indeed an allegation of causation. Moreover, as we stated above, in reviewing a motion to dismiss, we take all facts and inferences in the light most favorable to the pleader. *Gettings,* 41 S.W.3d at 541. Here, it is reasonable to infer from Envirotech's allegations that Defendants "induced," and therefore caused, DKW to breach the contract.

In the next point, TIC argues that Count III, "Conspiracy to Breach and Tortious Interference with Contract" failed to state a claim in that Envirotech failed to plead facts establishing that Defendants

acted without justification and were the proximate cause of the breach of contract. As we previously discussed, Envirotech did allege that Defendants acted without justification.

■ With regard to causation, TIC changes tactics somewhat and argues that Envirotech did not allege that "but for" Defendant's actions, DKW would have followed through with and fully performed under the contract. More specifically, TIC argues that "most" of the allegations of DKW's wrongdoing "had nothing to do with Defendants" and merely alleging "some" actions on the part of Defendants was insufficient, without alleging that those actions caused DKW to breach the contract. In reviewing a motion to dismiss, we must take all facts and reasonable inferences in the light most favorable to the pleader. *Gettings,* 41 S.W.3d at 540–41.

Envirotech alleged that it substantially performed its part of the contract and Defendants "induced" DKW to breach. Envirotech does not use the words "but for," however, causation can be reasonably inferred from Envirotech's allegations. TIC's argument that there were two possible causes of the breach is a *factual* determination that has no place in the review of a motion to dismiss. It is improper for this court to weigh facts when reviewing a motion to dismiss. See *Gettings,* 41 S.W.3d at 541. Thus, this argument is also rejected.

In its fourth point, TIC argues that Count IV, "Conspiracy to Breach and Tortious Interference with Contract," failed to state a claim in that Envirotech failed to plead facts establishing that Defendants acted without justification and were the proximate cause of the breach of contract. Count IV involves the September 1999 contract between DKW and Envirotech for lead abatement and asbestos removal. Once again, TIC argues that Envirotech

failed to allege "improper means" used by Defendants and did not allege "but for" causation. Again, causation can be inferred from Envirotech's allegations. Therefore, we reject this argument for the reasons set out above.

In its fifth point, TIC argues that Envirotech "commingles" causes of action in violation of Rule 55.11, which requires that plaintiffs state claims founded upon separate transactions or occurrences in separately numbered counts. TIC states that Envirotech's Second Amended Petition is a "frustrating and confusing" pleading, and we agree. Envirotech's petition contains sixty pages of repetitive allegations and unnecessary facts. However, it states claims upon which relief can be granted and does not warrant dismissal.

More specifically, TIC's argues that "Counts III and IV entitled 'Conspiracy to Breach and Tortious Interference with Contract' are confusing and seem to contemplate two causes of action at once: conspiracy and tortious interference." Indeed, these counts do "contemplate two causes of actions at once" and properly so. To establish Defendants' liability, Envirotech must plead facts of *both* conspiracy *and* the underlying claim. Although conspiracy has its own "elements" that must be proven, it is not a separate and distinct *action and is predicated on proof of the* underlying wrong. See *Gettings,* 41 S.W.3d at 542. Although Envirotech's petition could be greatly improved, we will not dismiss it on this ground.

TIC also argues that Count I is titled "Combination to Injure or Destroy Envirotech's Business" but contains an allegation that TIC "converted" Envirotech's tools, equipment and supplies. First, we note that whether Envirotech stated a claim is not determined by the title of its purported claims, but by the facts alleged. "It is the facts stated in the petition, along with the relief sought, which under our system of code pleading are to be looked at to determine the cause of action, rather than the form of the petition." *Goe v. City of Mexico,* 64 S.W.3d 836, 840 (Mo.App. E.D.2001). We are not bound by the name ascribed to the action if the plaintiff alleged facts that would support an action for damages. *Id.* Thus, the fact that the title of the count does not match the cause of action alleged is insufficient to cause the count to be dismissed. We note, however, that Envirotech's failure to accurately title counts is frustrating and compounds the overall poor quality of its petition.

## Conversion

Next, we address TIC's sixth point, in which TIC argues that Envirotech failed to plead every element for a claim for conversion against TIC, and its seventh point, in which TIC argues that Envirotech failed to state a claim for conspiracy to convert. These points correlate with Envirotech's and St. Louis Bridge's third points on appeal.

To state a claim for conversion, a plaintiff must plead and prove that he was entitled to possession, the defendant exercised unauthorized control and the defendant deprived plaintiff of his right to possession. *IOS Capital, LLC v. Allied Home Mortgage Capital Corp.,* 150 S.W.3d 148, 153 (Mo.App. E.D.2004). Stated in another case, "conversion may be proved in one of three ways: (1) by showing a tortious taking, (2) a use or appropriation by the defendant indicating a claim or right in opposition to the owner, or (3) a refusal to give up possession on demand." *Bell v. Lafont Auto Sales,* 85 S.W.3d 50, 54 (Mo.App. E.D.2002).

In its petition, Envirotech alleged (albeit not in a separately titled count) that:

At the time DKW terminated Envirotech, DKW seized tools, equipment, and supplies of Envirotech which were on

the Gateway job site, converting such to the use of DKW and TIC. Although Envirotech demanded a return of its tools, equipment and supplies, DKW or TIC or both used Envirotech's wrongfully seized tools, equipment and materials during TIC's work on the Gateway Renaissance Hotel.

In reviewing a motion to dismiss for failure to state a claim, we review the petition to determine whether the facts alleged meet the elements of a recognized cause of action, or a cause that *might be adopted* in that case. *Gettings*, 41 S.W.3d at 541. If the allegations invoke the principles of substantive law entitling plaintiff to relief, the petition should not be dismissed. *Id.*

■ TIC argues that Envirotech's allegation "does not state a direct conversion claim against TIC" because it alleged that DKW converted the tools. We agree. The allegation very clearly states that DKW seized the tools and is not clear to whom Envirotech made its demand for return of the tools. Rather, it appears that Envirotech was attempting to hold Defendants liable for DKW's conversion through joint and several liability established by conspiracy. However, on appeal, Envirotech argues that it pleaded that TIC "participated" or "joined" in the conversion of its tools. To the extent that this is an argument that it made a direct claim against TIC for conversion, this point is denied.

Envirotech's allegations in the petition do state a claim of conspiracy to convert.

Once again, we return to the two-step process of establishing liability in conspiracy. First, Envirotech must plead all facts of an underlying wrong, here conversion.

■ The facts alleged by Envirotech meet the elements of conversion. Envirotech pleads that DKW "seized tools, equipment and supplies *of Envirotech*." A reasonable inference from this statement is that Envirotech owned and was entitled to possession of those tools. Envirotech also states that DKW "converted" the tools to its own use and use by TIC, and characterizes the seizure of the tools as "wrongful." These allegations establish that DKW exercised unauthorized control of the tools. Finally, Envirotech alleged that it demanded return of the tools, equipment and supplies but the items were not returned. Thus, it alleged facts stating that the defendant deprived it of its right to possession. Clearly, Envirotech stated both a "use or appropriation" by DKW indicating a "claim or right in opposition to" Envirotech's and a refusal to give up possession on demand. *See, Bell*, 85 S.W.3d at 54.

Next, to hold a defendant liable for damages resulting from the conversion, Envirotech must plead that the defendant was involved in an illegal conspiracy. As we have discussed in great detail, Envirotech has alleged that TIC and the other defendants were involved in the illegal conspiracy.[15] Thus, Envirotech has alleged sufficient facts to state a claim for conspiracy to convert.[16]

15. TIC also argues that Envirotech did not allege a "meeting of the minds between DKW and TIC with regard to the alleged conversion." Indeed, Envirotech did not specifically allege a meeting of the minds with regard to the conversion of its tools and supplies; however, it alleged a meeting of the minds with regards to the conspiracy as a whole.

16. This issue seems to be unclear to the parties. To clarify, we reiterate that once Envirotech properly pleads conspiracy, it has stated a claim against persons *other than the wrongdoer* for joint and several liable for the damages. Thus, to hold Defendants liable for damages from the conversion, Envirotech did not have to allege that Defendants converted the tools. Rather, it had to allege that Defendants were involved in a conspiracy that resulted in the conversion of the tools. If both sets of facts are proven at trial, the Defen-

### Conclusion

The trial court erred in dismissing Envirotech's petition for the reason that Envirotech failed to allege proximate cause. In all counts, Envirotech stated claims upon which relief can be granted. While Envirotech did not state a claim for conversion against TIC, it did state a claim against Defendants for conspiracy to convert. The case is reversed and remanded to the trial court for further proceedings consistent with this opinion.

LAWRENCE E. MOONEY, PJ. and BOOKER T. SHAW, J., concur.

dants as to whom the facts are proven are jointly and severally liable for the damages.